IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-cr-99-RAW |
| ) | |
| BRYANT DEWAYNE UNDERWOOD, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Bryant Dewayne Underwood's ("Defendant") Opposed Suppression Motion and Brief in Support. (Docket No. 24). On July 31, 2024, United States District Judge Ronald A. White, who presides over this case, referred the subject Motion to the undersigned Magistrate Judge for Findings and Recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docket No. 25). On August 20, 2024, the undersigned Magistrate Judge conducted a hearing on Defendant's Motion ("motion hearing"). (Docket No. 33). Edith Singer appeared on behalf of the United States of America ("Government"). Rhyder Jolliff and Neil Van Dalsem appeared on behalf of Defendant, who was personally present. For the reasons set forth below, Defendant's Motion to Suppress should be DENIED.

### I.   Background

On October 23, 2023, at approximately 11:39 p.m., Wes Wiles, a Deputy with the LeFlore County Sheriff's Office ("Deputy Wiles"), observed a vehicle stop in the middle of Chloe Layne Road near the intersection of Chloe Layne Road and Casey Lane in Spiro, Oklahoma and let out two passengers. Deputy Wiles followed the vehicle, activated his emergency lights, and initiated a traffic stop. Once the vehicle stopped, Deputy Wiles approached the driver's side window of the vehicle and observed the buttstock of a rifle between the center console and Defendant, who was

the front seat passenger. Defendant was ordered to exit the vehicle. As Defendant was exiting the vehicle, a second firearm was observed next to him. A subsequent search of the vehicle found the firearm between Defendant and the center console to be a Sons of Liberty Gun Works short-barreled rifle which was registered to the Fort Smith Police Department. The second firearm observed next to Defendant was found to be a loaded Carl Walther Model HK 416 semi-automatic pistol.

Defendant has two previous felony convictions for Possession of a Controlled Dangerous Substance in Sequoyah County Case No. CF-2016-382 as well as LeFlore County Case No. CF-2016-628. Therefore, Defendant is prohibited from possessing firearms and ammunition.

Defendant has been charged in an indictment with possession of an unregistered firearm in violation of 26 U.S.C. §§ 15845(a), 5861(d), and 5871; and as a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(8). The indictment also contains a criminal forfeiture allegation, seeking forfeiture, upon Defendant's conviction of the violations charged in Counts One and Two, of all firearms and ammunition involved in the commission of the offenses pursuant to 18 U.S.C. § 924(d), 26 U.S.C. § 5872, and 20 U.S.C. § 2461(c). In the instant motion, Defendant seeks to suppress the firearms and ammunition found during the October 23, 2023, traffic stop. Defendant argues the traffic stop violated his Fourth Amendment rights because it was not justified at its inception.

II.   Analysis

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. A traffic stop is considered a "seizure" within the meaning of the Fourth Amendment and must be reasonable. *Whren v. United States,* 517 U.S. 806, 809-10 (1996). A traffic stop is reasonable only if: (1) it is "justified at its inception[,]" and (2) the officers' actions

are "reasonably related in scope to the mission of the stop." *United States v. Mayville,* 955 F.3d 825, 829 (10th Cir. 2020) (quotation omitted). In the Tenth Circuit, "a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina,* 71 F.3d 783, 787 (10th Cir. 1995) (en banc). The Court's "sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." *Id.* (quoting *Delaware v. Prouse,* 440 U.S. 648, 661 (1979)). Here, the Defendant challenges only the initial justification for the traffic stop.

Defendant asserts that the traffic stop violated his Fourth Amendment rights because it was not justified at its inception. Defendant contends that this violation mandates suppression of the firearms and ammunition that serve as the basis for the indictment. In response, the government asserts that the traffic stop was justified at its inception because Deputy Wiles: (1) observed Defendant committing a traffic violation, and (2) had reasonable suspicion that criminal activity was happening or beginning to happen. The Court agrees that the traffic stop was justified at its inception because Deputy Wiles observed Defendant committing a traffic violation, and thus, the Court does not need to address the government's remaining basis for justifying the traffic stop.

The statute at issue here, titled "Stopping, standing or parking outside of business or residence districts," provides in part:

> A.1. Upon any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway . . .
>
> 2. As used in this section . . . "highway" means any public road, street, or turnpike used for vehicular travel.

Okla. Stat. tit. 47 § 11-1001 (2023). This statute clearly imposes a duty upon a motorist to avoid stopping a vehicle on the traveled portion of a roadway when it is practical to stop off the roadway and is "aimed at preventing people from 'stop[ping, park[ing], or leav[ing] standing' their vehicles in unsafe positions." *Whittenburg v. Werner Enterprises, Inc.,* 561 F.3d 1122, 1133 (10th Cir. 2009) (quoting Okla. Stat. tit. 47 § 11-1001(A)(1)).

Defendant argued at the motion hearing that there is no evidence that this statute applies because the area the vehicle stopped in is "clearly" a residence district. However, the evidence before the Court indicates that the area in question is not a residence district. Okla. Stat. tit. 47, § 1-154 (2023) defines a residence district as: "[t]he territory contiguous to and including a highway not comprising a business district when the property on such highway for a distance of three hundred (300) feet or more is in the main improved with residences or residences and buildings in use for business." Defendant introduced Exhibit 9 at the motion hearing, which is an aerial map of Chloe Layne Road that Deputy Wiles marked to indicate where the vehicle Defendant was riding in stopped and where he when he saw the vehicle make such stop. This incident occurred on Chloe Layne Road between Richardson Lane and Casey Lane. On this section of Chloe Layne Road, there are no frontage residences to the south and there are only two frontage residences to the north. Although there is no evidence as to how far apart these two residences are from one another, the mere presence of two homes in the area does not lend itself to the conclusion that the frontage of this section of Chloe Layne Road for 300 feet or more is mainly occupied with "residences or residences and buildings in use for business" so as to constitute a "residence district" as defined in Okla. Stat. tit. 47, § 1-154 (2023). Quite the contrary, this section of Chloe Layne Road is mainly unimproved land. Because the area in question is not a residence district, Okla. Stat. tit. 47 § 11-1001(A)(1)) applies.

At the motion hearing, Deputy Wiles testified that the driver of vehicle Defendant was riding in stopped in the middle of Chloe Layne Road, that there was room for the driver to pull over to the side of the road, and that it is a violation of the law to stop in the middle of a roadway. Importantly, the constitutionality of a traffic stop does not depend on whether the driver did, in fact, commit a traffic violation. The standard is a reasonable suspicion of wrongdoing. Based on the evidence of record, the Court finds that Deputy Wiles witnessed a traffic violation, or at the very least possessed a reasonable articulable suspicion that a traffic violation had occurred. Thus, the October 23, 2023, traffic stop was justified at its inception and the evidence seized from the vehicle is admissible.

### III.   Conclusion

Because the traffic stop was justified at its inception, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant's Opposed Suppression Motion and Brief in Support (Docket No. 24) be DENIED.

The parties are given fourteen (14) days from the date of the service of this Report Recommendation to file with the Clerk of the court any objections with supporting brief. If specific written objections are timely filed, Fed. R. Crim. P. 59(b)(3) directs the district judge to:

> consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions.

Fed. R. Crim. P. 59(b)(3); see also 28 U.S.C. § 636(b)(1). Failure to timely object waives a party's right to appellate review. *See United States v. Goebel*, 959 F.3d 1259, 1266-67 (10th Cir. 2020).

IT IS SO ORDERED this 12th day of September, 2024.

_____
D. Edward Snow
United States Magistrate Judge